Filed 12/22/21  P. v. Williams CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ERIC ALEXANDER WILLIAMS,<br><br>    Defendant and Appellant. | B309676<br><br>(Los Angeles County<br>Super. Ct. No. GA071076) |

APPEAL from an order of the Superior Court of Los Angeles County, Dorothy L. Shubin, Judge.  Reversed and remanded.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Eric Alexander Williams (defendant) appeals from the order denying his petition for resentencing pursuant to Penal Code section 1170.95,[1] contending that the trial court erred in finding that he had not made a prima facie showing of eligibility for relief under that statute. We agree, reverse the order, and remand the matter to the superior court with directions to issue an order to show cause and conduct an evidentiary hearing pursuant to section 1170.95, subdivision (d).

## BACKGROUND

In 2009, defendant and two codefendants, Kamaron Walker and Juan Villatoro, were charged with the 2007 murder of Dion Holloway in violation of section 187, subdivision (a).[2] The information alleged pursuant to section 12022.53, subdivisions (b), (c), (d), (e), and (e)(1), that defendant and a principal personally used and intentionally discharged a handgun and that the crime was committed in association with a criminal street gang within the meaning of section 186.22, subdivision (b)(1)(C). For purposes of section 667, subdivision (a)(1) and the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), it was alleged that defendant had been convicted of a prior serious or violent felony. A jury convicted Walker of first degree murder and defendant of second degree murder. The court found defendant's prior conviction allegation true. The jury found true

---

[1]    All further statutory references are to the Penal Code, unless otherwise indicated.

[2]    Prior to trial Villatoro was allowed to plead guilty to being an accessory and received a sentence of 12 years in prison.

the allegation that Walker had personally and intentionally discharged a firearm, which proximately caused the victim's death. As to defendant, the jury found that he had personally used a firearm and that a principal had personally used and intentionally discharged a firearm that proximately caused the victim's death. The jury also found true the gang allegation. In January 2010, defendant was sentenced as a second strike offender to 15 years to life plus 25 years to life due to the firearm use allegation and five years for the recidivist enhancement. In 2011, we affirmed the judgment against defendant and Walker. (*People v. Walker* (June 30, 2011, B221399) [nonpub. opn.] (appellate opinion).)

The evidence summarized in the appellate opinion (relied upon by the trial court) showed that the murder occurred at approximately 10:00 p.m. After hearing multiple gunshots one witness saw a short, heavyset person wearing a dark-colored "hoodie," standing over a body, pointing with what the witness thought was a gun, before entering the passenger side of an older model Ford SUV. Two other witnesses saw a black SUV pass by slowly and saw the victim lying in the street. Two days later a photograph of the SUV driven that night by defendant was identified by one of the witnesses.

The victim died after sustaining seven gunshot wounds: three to the head, one to the neck, one to the back, and two above the hip. The wounds to the back and hip were consistent with the victim running away from the shooter when he was shot. However the shots to the back of the head were consistent with the victim not running.

Investigators arrived on the scene within two minutes of the shooting and observed several expended Hornady brand nine-

3

millimeter shell casings near the victim's body. A forensic specialist testified at trial that he rarely encountered Hornady brand casings. Approximately two and one-half hours after the shooting, a Pasadena police officer followed a speeding black Ford Explorer to Villatoro's residence, where the occupants were detained, and the driver was identified as defendant and the passenger as Villatoro. Both men were wearing dark-colored, hooded sweatshirts. On top of the residence mailbox an empty box of Hornady nine-millimeter bullets was found.

Villatoro testified that he and defendant were friends who in September 2007 saw each other daily. Defendant often drove Villatoro to sell methamphetamine. On the day of the shooting defendant arrived at Villatoro's home with Walker who, when Villatoro came out to meet them at the front of the house, was holding a gun. As Villatoro approached Walker wrapped the gun in a rag and put it into the engine compartment of defendant's car. Later Villatoro saw Walker with a second gun, a nine-millimeter semiautomatic handgun, and saw an ammunition box in the trash can. Villatoro retrieved it, placed it on top of the mailbox, and told Walker to dispose of it somewhere else. Defendant then asked Villatoro to accompany him as he took Walker home, somewhere in or near Pasadena. When they left Walker was in the front passenger seat, defendant was driving and Villatoro was in the back seat.

Walker gave directions to defendant as he drove. When they saw a group of African-American men Walker directed defendant to turn left, descend the hill, stop, and park. Walker explained that he needed to handle something. Walker then went to the front of the car and defendant released the hood lock at Walker's request. Walker returned with gloves and the nine-

4

millimeter handgun and called the group of men "slobs," which was a derogatory term for members of a Blood gang. Villatoro watched from the car as Walker walked uphill to a man walking downhill. The two spoke, and a few seconds later Walker began shooting at the man, who turned and ran. Walker chased him while shooting. When the man fell to the ground Walker continued to shoot him. Walker then returned to the car, put the gun back under the hood, and told defendant to drive away at a normal pace. After first making a few stops, Walker was taken home where he took the guns from the engine compartment and went into his house. After a break during trial, Villatoro recanted his testimony and instead testified that he was not with defendant and Walker at the time of the shooting.

The cell phone records of all three men corroborated their location at the time of the shooting. Walker's live-in girlfriend told officers that Walker did not come home that night until sometime after 10:00 p.m. In addition a recorded conversation between defendant and Walker later in the jail bus captured defendant telling Walker that the police were tracking them through their cell phones, to which Walker replied, "Your boy told on us." Both defendant and Walker said they were "ex-gang members." Defendant mentioned "[t]he box with the shells," and Walker replied, "They told me at his house or something."

Detective Grant Curry was called to testify by Walker. Detective Curry testified that he initially suspected defendant as the shooter because the police stated that defendant was short and stocky and wearing a black hooded sweatshirt. He later changed his mind because he did not think defendant was sufficiently stocky.

5

In July 2019, defendant filed a petition for resentencing pursuant to section 1170.95. The trial court appointed counsel for defendant and scheduled briefing. After briefing by both parties and hearing the argument of counsel, the court found that defendant had failed to make a prima facie showing of eligibility under the statute and summarily denied the petition without issuing an order to show cause.

Defendant filed a timely notice of appeal from the order.

## DISCUSSION

Defendant contends that as the record of conviction did not establish that he was ineligible for relief as a matter of law, the trial court erred in denying his section 1170.95 petition without issuing an order to show cause and by weighing the evidence. The People agree.

Section 1170.95 provides a procedure for convicted murderers to retroactively seek relief if they could not be convicted under sections 188 and 189 as amended effective January 1, 2019. (*People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*); see § 1170.95, subd. (c).) Under the amended statutes an aider and abettor may not be convicted of felony murder or murder under the natural and probable consequences doctrine if he was "'not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Gentile* (2020) 10 Cal.5th 830, 842.) A person is entitled to relief under section 1170.95 if, as relevant here, (1) "[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed . . . under the natural and probable consequences doctrine," (2) he "was

6

convicted of . . . second degree murder following a trial," and (3) he "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

As defendant's petition alleged all three conditions and requested appointment of counsel, the trial court properly appointed counsel, received briefing and then held a hearing to consider whether defendant had made a prima facie showing of eligibility under the statute. (See *Lewis, supra*, 11 Cal.5th at pp. 957, 962; see also § 1170.95, subd. (c).) The trial court was entitled to consider the record of conviction in making that determination. (*Lewis, supra*, at p. 971.) However, "[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id.* at p. 972, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*).) "[T]he 'prima facie bar was intentionally and correctly set very low.'" (*Lewis, supra*, at p. 972.)

"[W]hen assessing the prima facie showing, the trial court should assume all facts stated in the section 1170.95 petition are true. [Citation.] The trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing. Just as in habeas corpus, if the record 'contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner.' [Citation.] However, this authority to make determinations without

7

conducting an evidentiary hearing pursuant to section 1170.95, subd[ivision] (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime). [¶] If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief because he or she has met the requirements of section 1170.95(a), then the trial court should issue an order to show cause." (*Drayton, supra*, 47 Cal.App.5th at pp. 980-981; accord, *People v. Aleo* (2021) 64 Cal.App.5th 865, 871-872; *People v. Duchine* (2021) 60 Cal.App.5th 798, 811-812.)

Here, after considering the record of conviction and the parties briefs, the trial court found that defendant had not made a prima facie showing of eligibility for relief under section 1170.95 and that the prosecution had met its burden to prove beyond a reasonable doubt that defendant was ineligible for resentencing. We find that the trial court erred. Though the court stated it had not weighed the evidence because no contrary evidence was presented, it then denied defendant's request for an evidentiary hearing. The court extensively analyzed the facts presented in the appellate opinion, drew inferences, and independently concluded that the facts supported a conviction under an aiding and abetting theory. The court emphasized that Walker and defendant socialized the day of the murder; they are fellow gang members; Walker placed a gun in the engine compartment of defendant's car; defendant drove into and around rival gang territory at a time of high tension and multiple shootings between the two gangs; Walker identified rival gang members; defendant parked, popped the hood, and Walker

8

retrieved the gun and gloves; defendant waited in the car for Walker and then drove away at a speed intended not to attract attention; and evidence showed a gang motive.

The question to be resolved by the court at the prima facie stage is not whether there is evidence in the record of conviction that supports defendant's murder conviction, but rather, *taking the allegations of the petition as true*, whether "'"the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause."'" (*Lewis, supra*, 11 Cal. 5th at p. 971, quoting *Drayton, supra*, 47 Cal.App.5th at p. 978.)

Defendant's petition included the required allegations that (1) "[a] complaint, information, or indictment . . . allowed the prosecution to proceed . . . under the natural and probable consequences doctrine," (2) he "was convicted of . . . second degree murder following a trial," and (3) he "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1170.95, subd. (a); see *Lewis, supra*, 11 Cal.5th at pp. 957, 962.)  Thus, to refute those allegations at this stage the record of conviction must have shown that defendant's trial could not have proceeded on a natural and probable consequences theory or that defendant could still be convicted of murder under a theory that remains valid after the recent amendments to the murder laws.

The trial court indicated that it had read the papers submitted by the parties and the record of conviction, including the transcript and the appellate opinion, but neither the court nor the prosecution pointed to anything in the record of conviction that would show that defendant could not have been convicted under the natural and probable consequences doctrine,

9

despite the jury instruction and prosecution argument allowing it to do so.[3] There is also no indication in the reasons given by the trial court for its ruling that there had been a jury finding that defendant was the actual killer, harbored an intent to kill, or was a major participant who acted with reckless indifference to human life. Thus the record of conviction did not refute the truth of the allegations of defendant's petition, requiring the trial court to issue an order to show cause. (See *Lewis, supra*, 11 Cal.5th at p. 971, citing *Drayton, supra*, 47 Cal.App.5th at p. 978.)

The trial court conducted the sort of analysis that is left to the evidentiary hearing held pursuant to section 1170.95, subdivision (d) after an order to show cause has been issued. At such hearing the prosecution has the burden to prove beyond a reasonable doubt that defendant is guilty of murder under a *still valid* theory of murder. (See *People v. Duchine, supra*, 60 Cal.App.5th at pp. 815-816; *Drayton, supra*, 47 Cal.App.5th at p. 982.)[4]

## DISPOSITION

The order denying the section 1170.95 petition is reversed, and the matter is remanded for the issuance of an order to show

---

[3] In its opposition to the petition the prosecution merely made the argument that no prima facie showing was made because sufficient evidence supported a murder conviction under a direct aiding and abetting theory.

[4] In the alternative, "[t]he parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have his or her murder conviction vacated and for resentencing." (§ 1170.95, subd. (d)(2).)

cause and an evidentiary hearing pursuant to section 1170.95, subdivision (d).

_____

CHAVEZ, J.

We concur:

_____

LUI, P. J.

_____

ASHMANN-GERST, J.